# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES A. SIMON, JR.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-300** |
| **PARISH OF JEFFERSON** | **SECTION I/1** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, the

Parish of Jefferson "the Parish".[1]  Plaintiff, Charles Simon, opposes the motion.  For the

following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

Plaintiff, a white male of Italian and Jewish heritage, was hired by Jefferson Parish in

January, 2000, and transferred to the Jefferson Parish engineering department in October, 2002.[2]

Plaintiff alleges that during his time at the engineering department, his supervisor, Armand

Kerlec, subjected him to racial[3] and ethnic discrimination and harassment.[4]

According to plaintiff, Kerlec would repeatedly yell "Seig Heil" at plaintiff while doing a

Nazi salute.[5]  Plaintiff alleges that the harassment was "constant" and that Kerlec would also

reference plaintiff's Italian ancestry by referring to him as a "Dago.[6]"  Plaintiff further contends

that, when plaintiff first began working at the engineering department, Kerlec told him that

Kerlec's department was the "Jewel of the Nile" and told plaintiff that African-Americans and

---

[1] R. Doc. No. 43.
[2] R. Doc. No. 1, para. 12.
[3] Jewish people are permitted to seek redress for racial discrimination as a distinct race for the purposes of federal civil rights statutes.  See Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617-18 (1987).
[4] R. Doc. No. 1, para. 7.
[5] R. Doc. No. 1, paras. 8, 11.
[6] R. Doc. No. 1, paras. 10-11.

Jews were not welcome in Kerlec's department nor did they last long there.[7]  Plaintiff contends

that the alleged abuse culminated on November 2, 2005, when Kerlec fired him.[8]  On January 23,

2009, plaintiff filed this lawsuit alleging employment discrimination and retaliation.[9]

Defendant argues that plaintiff was not fired on November 2, 2005, but rather walked off

the job after a disagreement with Kerlec.  Defendant contends that Kerlec does not have the

power to fire plaintiff and that plaintiff was later terminated by the Parish because he was absent

without leave from his position.  Defendant argues that Kerlec's actions were not as severe as

plaintiff alleges and that plaintiff never took any steps to report Kerlec's behavior.

### STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and

disclosure materials on file, and any affidavits," the court determines there is no genuine issue of

material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the

initial responsibility of informing the court of the basis for its motion and identifying those

portions of the record that it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need

not produce evidence negating the existence of material fact, but need only point out the absence

of evidence supporting the other party's case.  Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co.,

780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the

other party must come forward with specific facts showing that there is a genuine issue of

material fact for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[7] R. Doc. No. 1, para. 15.  Plaintiff's complaint contains the actual slurs used in place of African-Americans and Jews.
[8] R. Doc. No. 1, para. 17.
[9] R. Doc. No. 1.

2

(1986). The non-moving party must carry this burden as to each essential element on which it

bears the burden of proof. Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th

Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical

doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by

only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)

(citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary

judgment may not rest upon the pleadings, but must identify specific facts that establish a

genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all

justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v.

Cromartie, 526 U.S. 541, 552 (1999).

### *DISCUSSION*

Plaintiff contends that the actions of Kerlec and others at the Parish violated plaintiff's

rights through: (1) a racially[10] motivated employment action under Title VII; (2) harassment

resulting in a hostile work environment; (3) retaliation for plaintiff's complaints concerning

Kerlec's behavior; (4) a conspiracy in violation of 42 U.S.C. § 1985; (5) violation of plaintiff's

rights to procedural due process and equal protection; and (6) violations of 42 U.S.C. §§ 1981

and 1983. The Court will address each of these claims in turn.

A. Racially motivated discharge

Title VII of the Civil Rights Act of 1964 ("Title VII") provides that it is an "unlawful

employment practice for an employer to discharge an individual . . . because of such individual's

---

[10] Plaintiff alleges discrimination based on both his race and national origin. Because the elements of proving a race and a national origin claim are identical, the Court will refer only to race discrimination in the opinion. See Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005)

race." 42 U.S.C. § 2000e-2(a)(1). A Title VII discrimination claim can be established through either direct or circumstantial evidence. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003).

Under the direct evidence approach, "[w]hen a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." Brown v. East Mississippi Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989)). "Where a plaintiff produces direct evidence of discrimination, he is entitled to bypass the McDonnell Douglas burden shifting framework commonly applied in discrimination cases and proceed directly to the question of liability." Stone v. Parish of East Baton Rouge, 329 Fed.Appx 542, 545 (5th Cir. 2009).[11] Defendant first argues that plaintiff did not suffer an adverse employment action because the defendant did not terminate plaintiff.[12]

### 1) Whether plaintiff suffered an contested employment action

Defendant disputes whether Kerlec, in fact, fired plaintiff. Plaintiff's testimony corroborated by the testimony of Eric Conway Scott,[13] demonstrates a genuine issue of material fact concerning whether Kerlec fired the plaintiff.

### 2) Whether Kerlec's actions were racially motivated

As stated above, in a direct evidence case, plaintiff's initial burden is to present credible direct evidence that suggests discriminatory animus in part motivated or was a substantial factor

---

[11] Because of this Court's opinion with respect to plaintiff's direct evidence of racial animus, the Court does not reach plaintiff's arguments concerning circumstantial evidence.
[12] R. Doc. No. 36-3, p. 8.
[13] Plaintiff testified that he was fired by Kerlec in Kerlec's office. R. Doc. No. 40-20, p. 31. While Scott was later unsure as to whether he actually observed plaintiff getting terminated, Scott corroborates that plaintiff and Kerlec had a dispute that evening in Kerlec's office and that they later were in a shouting match concerning whether plaintiff was fired. R. Doc. No. 36-6, p. 6.

in the contested employment action.  Brown, 989 F.2d at 861.  Routine use of racial slurs or

symbols can constitute evidence that racial animus was a motivating factor in the contested

disciplinary decisions.  Id.  The Fifth Circuit has established a four-part test to evaluate whether

comments made in the workplace provide direct evidence of discrimination: (1) the comments

are related to plaintiff's protected class; (2) the comments were proximate in time to the adverse

employment decision; (3) the comments were made by an individual with authority; and (4) the

comments were related to the employment decision.  Stone, 329 Fed.Appx. at 546.

Plaintiff presented evidence that his supervisor routinely used racial slurs and epithets.  In

a sworn affidavit, Brian Johnson avers that he observed Kerlec make the "heil Hitler" salute in

the workplace on "many" occasions.[14]  Eric Scott wrote an affidavit stating that Kerlec would

call plaintiff "dumb Dago" and Kerlec would regularly perform a Nazi salute in front of

plaintiff.[15]  Most significantly, plaintiff testified that, on the night he was fired, Kerlec told him,

"I'm firing your dumb Dago ass."[16]  This statement, corroborated by the affidavits, satisfies each

of the four factors and creates a material issue of fact as to whether the adverse employment

action was motivated by impermissible animus.

Because plaintiff has provided credible direct evidence of racial animus, the burden shifts

to defendant to demonstrate that the same decision would have been made regardless of the

forbidden factor.[17]  See Stone, 329 Fed.Appx. at 546.  Given Kerlec's alleged statements at the

time of the firing, the Court finds that a material issue of fact exists concerning whether the same

[14] R. Doc. No. 40-3.
[15] R. Doc. No. 40-4.
[16] R. Doc. No. 40-20, p. 18.
[17] Defendant also contends that plaintiff's wrongful discharge claims must fail because plaintiff failed to report
Kerlec's racial animus prior to termination.  Plaintiff's failure to report Kerlec's actions is not relevant to his
wrongful discharge claims, however, because "courts have consistently held employers liable for the discriminatory
discharges of employees by supervisory personnel, whether or not the employer knew, should have known, or
approved of the supervisor's actions."  Faragher v. Boca Raton, 524 U.S. 775, 790 (1998) (citations and quotations
omitted).  Ackel v. National Communications, Inc., 339 F.3d 376, 383 (5th Cir. 2003).

decision would have been made absent discriminatory animus and defendant's motion with respect to plaintiff's wrongful discharge claims is **DENIED**.

B. <u>Hostile Work Environment Claims</u>

To establish a hostile work environment claim plaintiff must demonstrate that:

> (1) he is a member of a protected group; (2) he was the victim of uninvited harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action.

<u>Harvill v. Westward Communications, L.L.C.</u>, 443 F.3d 428, 434 (5th Cir. 2005). However, where the harassment is allegedly committed by a supervisor with immediate authority over the harassment victim, the plaintiff need only satisfy the first four elements listed above. <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 353 (5th Cir. 2001).

The parties do not seriously dispute whether the first three factors are met. The Court turns to the question of whether the alleged harassment affected "a term, condition, or privilege of employment." In order for harassment to affect a term, condition, or privilege of employment, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. <u>Harris v. Forklift Sys. Inc.</u>, 510 U.S. 17, 21 (1993). Courts look to the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> at 23. The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Aryain v. Wal-Mart Stores of Tex, LP</u>, 534 F.3d 473, 479 (5th Cir. 2008).

As noted above, plaintiff presented evidence that Kerlec repeatedly and continuously used Nazi symbols and racial and ethnic slurs in plaintiff's presence. Brian Johnson testified that he observed Kerlec repeatedly and regularly do a Nazi style goose step and do a "heil Hitler" salute when giving plaintiff his work orders.[18] This use of Nazi imagery is objectively offensive. Plaintiff testified that, especially in light of his Jewish heritage, plaintiff was subjectively offended and found the workplace to be hostile and abusive.[19] Construing the evidence in the light most favorable to plaintiff, and after considering the totality of the circumstances, the Court finds that there is a material issue of fact as to whether Kerlec's alleged conduct created a hostile working environment.

Defendant has asserted that the Ellerth/Faragher affirmative defense bars plaintiff from recovering based on an allegedly hostile working environment.[20] This defense is not applicable, however, where the harassment is allegedly committed by a supervisor with authority over the plaintiff, and the harassment resulted in a tangible employment action against the plaintiff. Faragher, 524 U.S. at 808. Plaintiff has presented evidence that the racially motivated harassment culminated in plaintiff being discharged by his supervisor. Accordingly, at this stage, this defense is not available to defendant. Defendant's motion with respect to the hostile work environment claims is **DENIED**.

C. Retaliation Claims

To establish a prima facie case of retaliation, an employee must show (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. Id. If an

---

[18] R. Doc. No. 40-3.
[19] R. Doc. No. 40-21, pp. 29-31.
[20] To prevail on the basis of this defense, the employer must prove that: (a) it exercised reasonable care to prevent and promptly correct the discriminatory harassing behavior; and (b) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid the harm. Faragher, 524 U.S. at 807.

employee does not establish a prima facie case, the court dismisses the retaliation claims as a matter of law. Dehart v. Baker Hughes Oilfield Operations, 214 Fed.Appx. 437, 440 (5th Cir. 2007).

Defendant contends that plaintiff's claim for retaliation must fail because plaintiff failed to demonstrate a causal link between his protected activity and the adverse employment action. Although plaintiff argues that he made "numerous complaints to several different individuals in authority regarding Kerlec's behavior," the evidence cited by plaintiff demonstrates only one previous complaint on an unknown date.[21] This single complaint, a complaint for which plaintiff provides no corroboration or context, cannot support a retaliation claim because plaintiff has provided no evidence that his discharge was in any way related to this complaint. Plaintiff contends that he was discharged by Kerlec, but he provides no evidence suggesting that Kerlec was motivated by the complaint, nor even aware that plaintiff had complained.

Plaintiff also argues that plaintiff "made numerous statements to Kerlec that he was not happy with the hostile environment that Kerlec created."[22] Once again, the document cited by plaintiff in support of this proposition does not support plaintiff's contention. Plaintiff cites to "Scott Affidavit P-2 Sect. 11, 12." Those sections state:

> 11. Armand Kerlec said [plaintiff] was fired for insubordination for complaining about [Kerlec's] fingers in [plaintiff's] face.
>
> 12. Armand Kerlec stated, "Finally we got him. We can sleep in peace tonight/Crazy Chuck is gone!" They were happy he was fired.

R. Doc. No. 40-4. Rather than supporting plaintiff's argument, those statements actually suggest that plaintiff was fired due to a personal disagreement or insubordination rather than as

---

[21] Plaintiff cites to R. Doc. No. 40-20, p. 30, lines 8-11. That testimony reads: "Q. Now when - - you complained to a supervisor, Harry Rivero, previous to being terminated? A. Once. Once."
[22] R. Doc. No. 40, p. 17.

retaliation for plaintiff's complaints.[23]  Defendant's motion is **GRANTED** with respect to the retaliation claims and those claims are **DISMISSED WITH PREJUDICE**.

D.  § 1985 claim

42 U.S.C. § 1985(c) provides for liability for conspiracy to deprive a person of his federal rights.  An essential element of a § 1985(c) claim is that the conspiracy be motivated by some racial or other invidiously discriminatory animus.  Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 345 (5th Cir. 1981).  § 1985(c) is not intended to serve as general federal tort remedy.  Id.

Plaintiff claims that defendant violated § 1985(c) through its approval of Kerlec's actions, its lack of investigation, and the denial of due process.[24]  Plaintiff has not provided admissible summary judgment evidence supporting a conspiracy based on racial animus.  Although plaintiff claims that defendant approved of Kerlec's actions, plaintiff has provided no evidence that Jefferson Parish upheld his termination because of racial animus.  Additionally, plaintiff fails to identify any evidence that the motivation behind the alleged failure to investigate was based on racial animus.[25]  Accordingly, plaintiff's § 1985 claim is **DISMISSED WITH PREJUDICE**.

E.  Procedural due process and equal protection claims

"To show a due process violation in the public employment context, the plaintiff must first show that [he] had a legally recognized property interest at stake."  Lollar v. Baker, 196 F.3d 603, 607 (5th Cir. 1999).  Such a showing must be made by demonstrating that there is an

---

[23] Further, even if plaintiff did complain to Kerlec about Kerlec's harassment, such complaints would not form the basis for a retaliation claim.  If resistance to the actual harasser was a protected activity that formed the basis for a retaliation claim, "every harassment claim would automatically state a retaliation claim as well."  Del Castillo v. Pathmark Stores, Inc., 941 F.Supp. 437, 439 (S.D.N.Y. 1996); see also LeMaire v. La. Dept. of Transp. and Dev., 480 F.3d 383, 389 (5th Cir. 2007) (the rejection of sexual advances does not constitute a protected activity for purposes of a retaliation claim under Title VII).

[24] To the extent that plaintiff's claims are based off of his Title VII claims, § 1985 affords him no remedy.  Horaist v. Doctor's Hospital of Opelousas, 255 F.3d 261, 270 (5th Cir. 2001).

[25] The Court renders no opinion as to whether the investigation was actually deficient.

enforceable contract.  <u>Stidham v. Texas Com'n on Private Sec.</u>, 418 F.3d 486, 492 n.9 (5th Cir. 2005).  "Property interests based on at-will contracts do not rise to the level of protectable property interests."  <u>Id.</u>    Plaintiff has made no showing of an enforceable contract that would create a property interest in his employment position with Jefferson Parish.  While plaintiff generally alleges that he was not provided with the protections of the human resources policy, he does not identify any evidence or testimony to demonstrate what protections plaintiff claims he did not receive, nor any evidence reflecting the protections provided by the policy.  Because plaintiff has not demonstrated that he had a property interest in his continued employment, plaintiff's due process claims[26] are **DISMISSED WITH PREJUDICE**.

F.  <u>Section 1981 and 1983 claims</u>

Employees seeking to advance § 1981 claims against local government entities must do so through § 1983.  <u>Oden v. Oktibbeha County</u>, 246 F.3d 458, 464 (5th Cir. 2001).  In order for municipal liability to be imposed under § 1983, three elements must be proven: "a policymaker, an official policy, and a violation of constitutional rights whose 'moving force' is the policy or custom."  <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (<u>quoting</u> <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 694 (1978).  "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  <u>Id.</u> To be actionable, the municipal policy must cause the violation of rights.  <u>Id.</u> at n.16. "Culpability includes both the involvement of a municipal policymaker and affirmative municipal action."  <u>Id.</u> at n. 17.

---

[26] Plaintiff's opposition does not address defendant's arguments with respect to plaintiff's equal protection claims. Accordingly, those claims are dismissed.

Plaintiff has not provided any evidence that the alleged unconstitutional conduct, the alleged harassment and discharge by Kerlec, was in any way attributable to official policy, custom, or imprimatur.  Accordingly, plaintiff's § 1981 and § 1983 claims are **DISMISSED WITH PREJUDICE**.

*CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's retaliation claims, claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, procedural due process claims, and equal protection claims are **DISMISSED WITH PREJUDICE**.  Plaintiff may proceed to trial on his wrongful discharge claims and hostile work environment claims.

**IT IS FURTHER ORDERED** that the motion for reconsideration[27] filed by defendant is **DENIED**.[28]

New Orleans, Louisiana, February 26, 2010.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[27] R. Doc. No. 51.
[28] The Court has viewed the DVD submitted by plaintiff.  R. Doc. No. 40.  It contains deposition excerpts that represent appropriate summary judgment evidence.  To the extent that defendant argues that the excerpts are taken out of context, defendant does not provide sufficient information for the Court to evaluate that claim.  Nevertheless, the Court did not rely on any of the statements contained on the DVD in reaching its opinion on the motion for summary judgment and none of the statements contained therein would change the Court's opinion on the motion.